**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FRANK B.,**

|                                    |                        |
|------------------------------------|------------------------|
| **Plaintiff,**                     | **1:19-cv-668 (GLS)**  |
| **v.**                             |                        |
| **ANDREW SAUL,**                   |                        |
| **Defendant.**                     |                        |

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|------------------|-----------------|

**FOR THE PLAINTIFF:**
Legal Aid Society of            MARY MARTHA WITHINGTON,
Northeastern NY                 ESQ.
40 New Street
Saratoga Springs, NY 12866

**FOR THE DEFENDANT:**
HON. GRANT C. JACQUITH          MOLLY CARTER
United States Attorney          Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Ellen E. Sovern
Regional Chief Counsel
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Frank B. challenges the Commissioner of Social Security's denial of Social Security Disability Insurance (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Frank's arguments, the Commissioner's decision is affirmed.

### II. Background

On July 13, 2016, Frank B. applied for DIB and SSI benefits under the Social Security Act ("the Act"), alleging a disability that began on April 12, 2016.  (Tr.[1] at 169-83.)  When his applications were denied, (*id.* at 102-09), he requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 110-12), which was held on June 19, 2018, (*id.* at 31-69).  On July 26, 2018, the ALJ issued a decision denying Frank's claims for DIB and SSI benefits, (*id.* at 7-30), which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review, (*id.* at 1-4).

---

[1] Page references preceded by "Tr." are to the administrative transcript.  (Dkt. No. 8.)

Frank commenced the present action on June 5, 2019 by filing his complaint, wherein he seeks review of the Commissioner's determination. (Compl.)  Thereafter, the Commissioner filed a certified copy of the administrative transcript.  (Dkt. No. 8.)  Each party filed a brief seeking judgment on the pleadings.  (Dkt. Nos. 9, 11.)

## III.  <u>Contentions</u>

Frank contends that: (1) the ALJ erred in failing to consider his severe impairments in combination with one another; (2) the ALJ erred in failing to give Frank's complaints of pain significant weight, and failing to engage in the analysis required by Social Security Ruling (SSR) 16-3p; (3) the ALJ erred in failing to give significant weight to the opinion of Dr. Patricia Henel, and by concluding that Frank has only moderate limitation in his mental functioning; (4) the ALJ erred in finding that Frank has the residual functional capacity (RFC) to perform light work in certain occupations identified by the vocational expert (VE); and (5) the ALJ's decision is against substantial weight of the evidence and is incorrect as a matter of law.  (Dkt. No. 9 at 16-25.)  The Commissioner counters that the court should affirm the ALJ's decision because it is based on substantial

evidence,[2] and free from legal error.  (Dkt. No. 11 at 15.)

## IV.  Facts

The court adopts Frank's factual recitations to the extent they are consistent with the facts contained in the ALJ's decision and supported by the medical record.  (Tr. at 12-25; Dkt. No. 9 at 4-16.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-3 (N.D.N.Y. Mar. 19, 2008).

---

[2]  "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) (internal quotation marks and citation omitted).

[3]  The § 405(g) standard of review in DIB proceedings brought under Title II of the Act also applies to SSI proceedings under Title XVI of the Act.  *See* 42 U.S.C. § 1383(c)(3). Similarly, the analysis of SSI claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to DIB claims under Title II.  *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Accordingly, although the regulatory sections cited herein are sections of Title II, the substance is found in both Title II and Title XVI.

## VI.  Discussion

**A.  RFC Determination**

Frank argues that the ALJ erred in calculating his RFC in that the ALJ allegedly failed to (1) consider Frank's impairments in combination with one another, (2) give Frank's subjective complaints significant weight, and (3) give significant weight to Dr. Henel's opinions.  (Dkt. No. 9 at 16-22.)

A claimant's RFC "is the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996).

Here, the ALJ determined that Frank has the RFC "to perform light work . . . except [he is] able to perform all postural activities occasionally, should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, pollen, and extreme heat, and limited simple routine tasks, with occasional interaction with the public and coworkers, and with no

5

production paced work."  (Tr. at 15.)

1.     *The ALJ's Alleged Failure to Consider Frank's Impairments in Combination with One Another*

Frank argues that the ALJ erred in failing to consider Frank's impairments in combination with one another.  (Dkt. No. 9 at 16-18.)  The ALJ found that Frank suffers from the following severe impairments: cervical spondylosis and stenosis, lumbar spondylosis and stenosis, lumbar osteophytes, asthma/chronic obstructive pulmonary disease, depression, anxiety, obsessive compulsive disorder (OCD), and post-traumatic stress disorder.  (Tr. at 13.)  However, at step three of the sequential analysis, the ALJ determined that Frank's impairments "do not reach the level of severity to meet or medically equal any of the [listed] impairments."  (*Id.*)  The ALJ expressly considered the impairments individually and in combination with one another when making this decision.  (*Id.*)

It is unclear to the court, and probably to the Commissioner as well, which step of the sequential review process Frank is challenging with this contention.  In so far as severity is concerned, the ALJ found that Frank suffered from numerous severe impairments, and it is clear from his decision that the ALJ considered his impairments both individually and in

6

combination with one another at step three.  As best as the court can ascertain, this contention is a challenge to the RFC determination.

In any event, the contention fails because the ALJ's decision shows that he did indeed consider Frank's impairments in combination with one another when determining Frank's RFC, as he expressly considered "all symptoms," (Tr. at 15), and the "entire record," (*id.* at 23), when making this determination.  *See Wright v. Berryhill*, 687 F. App'x 45, 49 (2d Cir. 2017) ("We are satisfied . . . that the ALJ properly considered the combined effect of the Plaintiff's impairments in determining that the Plaintiff had the [RFC] to perform a range of light work.  The ALJ specifically stated that he had considered 'the entire record' and 'all symptoms' in reaching his determination." (citation omitted)).

### 2.    *The ALJ's Consideration of Frank's Subjective Complaints*

Frank argues that the ALJ erred "in failing to give [Frank's subjective] complaints of chronic disabling pain significant weight[,] and failing to engage in the analysis required by SSR 16-3p."[4]  (Dkt. No. 9 at 18-19.)

---

[4]  Frank's additional argument, that the ALJ prevented him from elaborating on his symptoms at the administrative hearing, is belied by the hearing transcript, which contains at least twenty pages of testimony from Frank about his symptoms and how they affect his day-to-day life.  (Tr. at 42-63, 67-68.)  Moreover, Frank was represented by counsel at the administrative hearing, and his counsel had the ability to question Frank, and did indeed question him, about his symptoms.  (*Id.* at 59-63, 67-68.)

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, Frank made the following subjective complaints at his

administrative hearing: constant neck pain, which radiates into his shoulders; constant back pain, which radiates into his hips, legs, and feet; numbness in his feet; difficulty sleeping; shortness of breath with wheezing and coughing, which is made worse by warm weather; the need to take constant breaks when doing ordinary household chores; engaging in repetitive behavior, including clicking the top of his medicine bottles repeatedly, staring at things for long periods of time, and holding his breath; difficulty sustaining attention and concentration; difficulty standing, sitting, or walking for long periods of time; forgetfulness; numerous episodes of anxiety per day; social anxiety; lack of empathy; self-harm; flashbacks; and past alcohol abuse.  (Tr. at 43-54, 58, 60-63.)

The ALJ expressly took these subjective complaints into account and found that Frank's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his subjective statements "concerning the intensity, persistence[,] and limiting effects of these symptoms" were inconsistent with the evidence in the record.  (*Id.* at 16.)  Specifically, the ALJ considered all of the objective medical evidence since the alleged onset date, including various treatment records from Glens Falls Hospital and the Baywood Center, as well as the medical

9

opinions of primary care providers Kate Sauer-Jones, a physician's

assistant, and Dr. James Hindson; a consultative physician, Dr. Albert

Paolano; Dr. James Greenspan, who performed a neurological evaluation

on Frank; and psychologists Dr. Thomas Osika and Dr. S. Hennessey, all

of which serve as substantial evidence to support the ALJ's finding that

Frank has "greater sustained capacity than alleged by [him]."  (*Id.* at 16-23,

72-101, 309-77, 383-426, 437-549.)  The specific evidence relied upon by

the ALJ is thoroughly described in his decision, (*id.* at 16-23), and in the

Commissioner's opposition brief, (Dkt. No. 11 at 5-8), and need not be

rehashed here.

Ultimately, the ALJ explicitly acknowledged consideration of 20

C.F.R. § 404.1529 and SSR 16-3p when making his credibility

determination, (Tr. at 15), and it is evident from his thorough discussion

that the determination was free from legal error.  *See Britt v. Astrue*, 486 F.

App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R.

§ 404.1529 and the applicable SSRs as evidence that the ALJ used the

proper legal standard in assessing the claimant's credibility); *see also*

*Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y.

June 25, 2012) ("Failure to expressly consider every factor set forth in the

regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." (internal quotation marks, alteration, and citation omitted)).

Accordingly, the ALJ's credibility finding is free from legal error and supported by substantial evidence.

### 3.   *Weighing Opinions of Medical Professionals*

Frank argues that the ALJ erred by failing to give "significant weight to the opinion of Dr. Henel[,] who provided mental health counseling to [him] during the relevant period," and by determining that Frank had "only moderate limitation in his mental functioning."  (Dkt. No. 9 at 20-22.) Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c).  The ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  *See* 20 C.F.R. § 404.1527(c).

The ALJ must provide "'good reasons' for the weight given to the

treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id.* at 407 (internal quotation marks and citation omitted).

Here, Frank argues that the ALJ should have given significant weight to Dr. Henel's opinions that Frank had severe depression and anxiety, was "unable to perform his occupation[,] and was completely disabled from work functions." (Dkt. No. 9 at 21.) Frank challenges part of the ALJ's rationale for affording Dr. Henel's opinions less than significant weight, *i.e.*, that the opinions were inconsistent with her own opinions and the opinions of other medical professionals, and that more than seven months had passed between her meeting with Frank and the preparation of her November 2017 medical source statement. (*Id.* at 20-22.)

The ALJ's decision to afford less than significant weight to Dr. Henel's opinions is supported by substantial evidence. First, his decision to give no weight to Dr. Henel's opinion that Frank is "completely disabled from work,"

(Tr. at 21), is free from legal error, as that is a decision reserved for the Commissioner.  *See Albizu v. Berryhill*, 335 F. Supp. 3d 355, 378 (E.D.N.Y. 2018) ("Although treating physicians may share their opinions concerning a patient's inability to work and the severity of the disability, the ultimate decision of whether an individual is disabled is 'reserved to the Commissioner.'" (citing 20 C.F.R. § 404.1527(d)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

Next, the ALJ discounted Dr. Henel's additional opinions based on (1) internal inconsistency, (2) inconsistency with the opinions of the examining consultative psychologist and reviewing state consultant psychologist, (3) the limited amount of mental health therapy sessions attended by Frank, and (4) in the case of Dr. Henel's November 2017 medical source statement, that the opinions were made more than seven months after treatment.  (Tr. at 21-22.)

The ALJ's decision to take these considerations into account was free from legal error and supported by substantial evidence.  *See* 20 C.F.R. § 404.1527(c)(2)(i) (noting the importance of frequency of examination when determining whether to give a medical professional's opinions significant weight); *Keys v. Berryhill*, No. 1:16-CV-00448, 2017 WL

4324689, at *4 (W.D.N.Y. Sept. 29, 2017) ("The ALJ also appropriately took

into account the gap between the date plaintiff [was] last treated with [the

treating psychiatrist] and the date [the treating psychiatrist] issued his

opinion."); *Liberatore v. Colvin*, No. 5:15-CV-1483, 2016 WL 7053443, at *5

(N.D.N.Y. Dec. 5, 2016) (noting that the ALJ's decision to give little weight

to a treating doctor was supported by substantial evidence based on the

internal consistency of the treating doctor's opinions and the inconsistency

of the treating doctor's opinions with those of other medical professionals);

*Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is

entitled to rely upon the opinions of both examining and non-examining

[s]tate agency medical consultants, since such consultants are deemed to

be qualified experts in the field of social security disability." (citations

omitted)).  The specific evidence relied upon is thoroughly explained in the

ALJ's decision, (Tr. at 21-22), and in the Commissioner's opposition brief,

(Dkt. No. 11 at 8-12), and need not be rehashed here.

Additionally, as noted by the Commissioner, the ALJ's RFC

determination "is not necessarily inconsistent with [much of] Dr. Henel's

[opinions]," as the ALJ limited Frank to "simple, routine tasks with only

occasional interaction with the public or co-workers and no production

14

paced work." (*Id.* at 9; Tr. at 15.)

In sum, the ALJ's decision to give less than significant weight to Dr. Henel's opinions is supported by substantial evidence and free from legal error.  Accordingly, this contention fails as well.

## B.    Step Five Determination

At step five of the sequential review process, a "limited burden" shifts to the Commissioner to "show that there is work in the national economy that the claimant can do."  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  ALJs may rely on the testimony of VEs to support their findings. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).  When utilizing a VE, the ALJ poses hypothetical questions which must reflect the full extent of the claimant's capabilities and impairments to provide a sound basis for the VE's testimony.  *See De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984).

When a hypothetical question meets that requirement, and is supported by substantial evidence, VE testimony suffices as substantial evidence to support a step five finding.  *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010); *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010).  Conversely, VE testimony given in

response to a hypothetical question that does not present the full extent of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, cannot constitute substantial evidence to support a conclusion of no disability.  *See Pardee v. Astrue*, 631 F. Supp. 2d 200, 211-12 (N.D.N.Y. 2009).

Frank contends that the ALJ erred in finding that Frank had the RFC to work as a sales attendant, molding machine operator, and/or inspector/hand packager.  (Dkt. No. 9 at 22-23.)  Specifically, Frank asserts that sales attendants "have frequent, not occasional, interactions with members of the public"; molding machine operators are exposed to toxic odors and face "production quotas"; and the job of an inspector/hand packager involves production quotas and "repetitive upper extremity use." (*Id.*)  In response, the Commissioner concedes that the ALJ erred in determining that Frank has the RFC to perform the job of a sales attendant, but argues that this error is harmless, as the ALJ properly determined that Frank has the RFC to perform the jobs of molding machine operator and inspector/hand packager.  (Dkt. No. 11 at 13-15.)  The court agrees with the Commissioner.

First, having resolved Frank's arguments about the ALJ's RFC finding

16

adversely to him, *see supra* Part VI.A, any challenge to the hypothetical question posed to the VE, which accurately reflected Frank's RFC, is flawed.[5]  Thus, the VE's testimony about the availability of jobs in the national economy that Frank could perform, (Tr. at 64-66), served as substantial evidence for the ALJ's determination that Frank was not disabled within the meaning of the Act.  *See Mancuso*, 361 F. App'x at 179 ("The Commissioner may rely on a [VE]'s testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." (citation omitted)); *Salmini*, 371 F. App'x at 114 ("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the [VE] that was based on that assessment." (citation omitted)).

Frank's unsupported argument that molding machine operators are exposed to toxic fumes is belied by the VE's testimony, (Tr. at 64-66), and

―――――――――――――――

[5]  Frank challenges the hypothetical question posed to the VE, because it did not include "issues from OCD[,] which further diminish the individual's abilities to be satisfied with quality and abilities to maintain a competitive pace."  (Dkt. No. 9 at 23.)  But Frank's issues with OCD are reflected in the RFC, including the limitation of "no production paced work," (Tr. at 15), and that RFC was supported by substantial evidence, *see supra* Part IV.A, and included in the hypothetical posed to the VE, (Tr. at 65).  Accordingly, this challenge fails.  *See Mancuso*, 361 F. App'x at 179.

the Dictionary of Occupational Titles guidelines, *see* Dictionary of Occupational Titles, Code 556.685-022, 1991 WL 683478 (4th ed., 1991). Next, Frank has provided no evidence to support his argument that molding machine operators and inspectors/hand packagers face production quotas, and that "repetitive upper extremity use" is required for work as an inspector/hand packager.  As noted by the Commissioner, and explained above, without any evidence to the contrary, the VE's testimony serves as substantial evidence that these occupations are occupations that an individual with Frank's RFC can perform.  *See Mancuso*, 361 F. App'x at 179.  Indeed, as conceded by Frank, (Dkt. No. 9 at 22), the hypothetical posed to the VE reflected "limited to light exertionals and all posturals limited to occasional," and that the claimant could not perform "production pace[d] work," (Tr. at 64).

Because the ALJ's finding that Frank could perform work as a molding machine operator and inspector/hand packager was free from legal error, it follows that the ALJ's error in determining that Frank has the RFC to work as a sales attendant was harmless, as the ALJ identified two other occupations with a significant amount of jobs in the national

economy.[6]  *See Barnaby v. Berryhill*, 773 F. App'x 642, 644 (2d Cir. 2019) ("[T]he Commissioner's burden is to identify . . . one job existing in significant numbers in the national economy that [the claimant] could perform, and two light work jobs were specified. . . . The Commissioner thus sustained her burden." (citation omitted)); *Diane D. v. Saul*, 5:18-CV-1146, 2020 WL 1044136, at *6 (N.D.N.Y. Mar. 4, 2020) ("[C]ourts have found that as little as 10,000 jobs can constitute a significant number for the purpose of a Step Five finding." (citation omitted)).

Accordingly, the ALJ's finding that Frank was not disabled at step five of the sequential review process is supported by substantial evidence and free from legal error.

## C.   Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision, as it is supported by substantial evidence and free from legal error.[7]

---

[6]  According to the VE, there are 40,000 molding machine operator jobs and 140,000 inspector/hand packager jobs in the national economy.  (Tr. at 65.)

[7]  Frank's fifth contention, that the ALJ's decision is "against the substantial weight of the evidence and is incorrect as a matter of law," appears to be a mere summary of his previous four contentions.  (Dkt. No. 9 at 23-25.)  This contention fails for the same reasons as described above.  *See supra* Parts VI.A, B.  And, to be sure, the court reviewed the entirety of the ALJ's decision and finds that substantial evidence supports his findings at each step of the sequential review process.

## VII.  <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

Frank B.'s complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 11, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge

20